JOHN M. HENRY, APPELLEE, v. CITY OF LINCOLN, APPELLANT.

FILED MARCH 13, 1915. No. 18,740.

1. **Appeal:** LAW OF THE CASE. The determination of a question on appeal becomes the law of the case, and will not ordinarily be reexamined on a subsequent appeal in the same case.

2. ——: NEGLIGENCE: CONFLICTING EVIDENCE. In an action for personal injuries, negligence and contributory negligence, where there is a substantial conflict in the evidence, are questions for the jury, and their findings on those issues will not be set aside on appeal unless clearly wrong.

3. **Evidence:** OBJECTIONS: FOUNDATION. In an action for personal injuries caused by electricity, an objection to admitting in evidence, on the ground that no foundation had been laid, an electric switch, may be overruled, where counsel for defendant in the opening statement pointed it out as the identical switch by which plaintiff was injured.

4. ——: CARLISLE TABLE. The Carlisle table of expectancy may be admitted in evidence in the trial of an action for personal inju-

97 Neb. 55

ries resulting in the permanent impairment of plaintiff's earning capacity, age and good condition of health at the time of the injury being shown.

5. **Appeal:** RULING ON EVIDENCE. A judgment will not be reversed on account of a ruling on evidence, where the record shows that appellant was not prejudiced thereby.

6. **Trial:** INSTRUCTIONS. Where instructions as a whole correctly state the law applicable to the evidence, they will not be condemned as erroneous, though an isolated statement might be open to criticism.

7. **Damages.** A verdict for $6,500 in favor of a healthy young man with a good earning capacity, which was permanently impaired at the age of 21, *held* not excessive, where the evidence shows that he suffered pain and anguish from an electric burn resulting in a severe shock and in the loss of the thumb and the index finger of his left hand.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Fred C. Foster* and *D. H. McClenahan,* for appellant.

*W. B. Comstock, contra.*

ROSE, J.

This is an action by an employee in the water department of the city of Lincoln to recover from his employer damages in the sum of $10,000 for personal injuries sustained September 3, 1908. At that time plaintiff had been in the employ of defendant for a month as a motor-tender at the Rice pumping station near the intersection of Twenty-fourth and N streets. He worked alone at the bottom of a cylindrical pit 50 feet deep and 25 feet in diameter, where two pumps, propelled by electricity were located. Intending to prime one of the pumps, which had lost its suction, plaintiff stepped onto a 12-inch wheel on a perpendicular valve-stem extending a foot or more above the floor of the pit and, by the turning of a similar wheel on the end of a horizontal valve-stem about five feet higher, attempted to open a valve between a water main and the pump. The wheel under him turned and he lost his balance. In attempting to protect himself from a fall, he

threw out his left hand, which came in contact with an electric switch or switch-handle less than three feet from where he had stood. Electric burns resulted in the amputation of the thumb and the index finger and a neuroma followed. In substance the negligence charged, in view of the situation and conditions shown by the petition, consisted in the failure: To warn plaintiff of danger or to instruct him how to avoid injury; to cover, or provide a guard for, the switch; to ground the switch or to connect the trip-coils; to provide sufficient space between the switch and the valve-stems; to furnish sufficient insulation for the switch and the switch-handle; to provide a switch sufficient for 4,400 volts, that amount of electromotive force having been used with a switch designed for 2,500 volts; to provide a covering for the damp floor; to place the upper valve within reach of the floor, or provide proper means for reaching and operating it; to furnish a safe place to work. Defendant in its answer denied negligence, and pleaded the performance of its duties to plaintiff, assumption of risk and contributory negligence. From judgment on a verdict in favor of plaintiff for $6,500, defendant has appealed.

Failure of plaintiff to file with the city clerk a statement of his claim within 30 days from the date of his injury is argued as a ground of reversal, and the city charter is cited to sustain the argument. Rev. St. 1913, sec. 4582. The identical point under the same petition was decided adversely to defendant on a former appeal. *Henry v. City of Lincoln*, 93 Neb. 331. The former ruling is therefore the law of the case and will not now be reexamined. *Bettle v. Tiedgen*, 85 Neb. 276.

The assignment to which the principal argument applies is alleged error in the refusal to direct a verdict for defendant on account of the insufficiency of the evidence to show that the proximate cause of plaintiff's injuries was the actionable negligence of defendant. The question is a perplexing one. The vital issues are complicated by many charges of negligence. The evidence is voluminous and much of it is the testimony of experts on the subjects of

electricity and electrical appliances. The relation of different items of proof to a particular charge of negligence is not always clear. The identical switch of which plaintiff complains was before the trial court and the jury, but it is not in the record for review. Some of the witnesses testified with reference to the switch as it appeared before them. Their testimony may have had a definite import in the trial court, but it is not all intelligible on appeal, in absence of the exhibit to which it relates. There appears, however, to be proof of each charge of negligence, though this is vehemently controverted by defendant. The circumstances and conditions under which plaintiff worked at the bottom of the pit are disclosed. The record contains proof tending to show: As a motor-tender plaintiff was inexperienced. He was not familiar with the danger of electromotive force or with the means of controlling and applying it. The switch or the switch-handle was uncovered and unguarded. It was not grounded. At the time of the injury it was subjected to a test of 4,400 volts, while it was designed for 2,500 volts, the latter having been stamped on the instrument itself by the manufacturer. It was insufficient for so severe a strain, the insulation being impaired and the danger being increased by dampness in the pit. The weather was warm. Water had collected on and dripped from the pipes. The floor was wet and uncovered. The space between the valve-stems and the electric switch was too narrow for safety. The wheel on the perpendicular valve-stem was the only means of reaching the valve above and the latter was too high to be operated from the floor. An experienced motor-tender who worked in plaintiff's absence frequently turned the upper valve while standing on the wheel below. Plaintiff was not warned of existing danger or instructed how to prevent injury. What has been thus said may be deduced from the proofs. The narrative is not intended as a statement of facts. It is meant for a summary indicating the nature of the testimony on which plaintiff relies. All of the proof tending to show actionable negligence is contradicted, but the issues of fact were for the jury and they were deter-

mined adversely to defendant. The conclusion is that the evidence is sufficient to sustain findings that negligence in the use of the electric switch and switch-handle, when considered with the strain to which it was subjected, under all of the circumstances and conditions proved, was the proximate cause of the injury, that plaintiff was not guilty of contributory negligence, and that he did not assume the risk of the injuries inflicted. It follows that there was no error in refusing a peremptory instruction for defendant.

Another assignment challenges a ruling admitting the electric switch in evidence. The objection at the trial was: "No foundation laid." This objection was properly overruled because counsel for defendant had, in his opening statement to the jury, pointed to the switch as the identical one described in the petition.

It is also contended that the trial court erred in admitting in evidence the Carlisle table showing the expectancy of life at the age of 21. Plaintiff was not quite that old when injured. His good health was shown. There was evidence that his earning capacity was permanently impaired by his injuries. These are circumstances under which tables of expectancy are admissible.

There were also objections to rulings on evidence relating to the character and the use of the switch and to plaintiff's earning capacity before and after the injury, but in these respects error is not affirmatively shown.

The following instruction is challenged as erroneous: "You are instructed that the burden of proof in this case is upon the plaintiff to prove, by a preponderance of the evidence, all the material allegations in his petition. That is to say, that, at the time of the accident alleged, the defendant was guilty of negligence, as stated in the petition; that, as the proximate result of such negligence, the plaintiff sustained injuries, as alleged in the petition, and, by reason of said injuries, the plaintiff has been damaged, as alleged in the petition, and the amount of such damages. When the plaintiff has shown these facts, then the burden of proof is upon the defendant to prove, by a preponderance of the evidence, the allegations of its answer, con-

stituting its defense to plaintiff's action. That is to say, that any injuries received by the plaintiff were the proximate result of his own negligence, or that his own negligence contributed thereto, as a proximate cause thereof."

The principal criticisms are: "This instruction shifts the burden of proof and requires the defendant to prove the allegations of its answer, regardless of whether the plaintiff, by his pleadings and evidence, showed that he was guilty of contributory negligence. It also requires the defendant to establish its freedom from negligence by a preponderance of the evidence."

When the entire charge is considered, the instruction is not open to the objections urged.

Another instruction contains the following language: "It is also a general rule of law that, where both parties are in the wrong, no liability arises. That is to say, even though you should find the defendant negligent, as alleged in the petition, yet if you should further find that the plaintiff's own negligence also contributed as the proximate cause of the injury sustained, then in such case no liability would arise against the defendant."

Another part of the charge reads: "You are instructed that the burden of proving negligence rests upon the party alleging it, and where a person charges negligence on the part of another as a cause of action he must prove the negligence, by a preponderance of the evidence, and in this case, if the jury find that the weight of the evidence is in favor of the defendant, or that it is equally balanced, then the plaintiff cannot recover, and the jury should find the issues for the defendant."

The charge as a whole required the jury to find, as conditions of the right of plaintiff to recover, that negligence pleaded by him was established by a preponderance of the evidence and was the proximate cause of his injuries. When the instructions are properly interpreted, the jury were not permitted to find for plaintiff if he was guilty of contributory negligence. The burden of proving that defense was not placed on defendant, unless the allegations of the petition were established. In view of what has been said

in regard to the evidence, there is no prejudicial error in the giving or refusing of instructions.

The recovery is vigorously assailed as excessive, but a substantial reason for setting aside the verdict on· this ground has not been suggested. Plaintiff was a minor in good health when his hand was burned. He was shocked and his injuries were distressing. He had a good earning capacity, which was permanently impaired. He lost the thumb and the index finger of his left hand. In the cicatrix there was a sensitive neuroma at the time of the trial. To remove it would require an operation. The utility and beauty of a perfect human hand represent the activity and development of the race. The hand protects other parts of the body. Its movements respond to the will and add grace and charm to oral expression. By a caress the hand may communicate the impulses of the heart to others. When it becomes repulsive by a deformity it may produce mental anguish—an element of damage. On appeal it is difficult to determine how much the jury may properly award for pain and suffering and other indefinite, though substantial, elements of recovery. Interference with a verdict as excessive must rest on substantial grounds.

No prejudicial error has been found, and the judgment is

AFFIRMED.

BARNES, J., dissents.

LETTON, J. I believe the recovery should not exceed $4,500.