JOHN RUSSO, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 5, 1915. No. 18097.

1. **Appeal: CONFLICTING EVIDENCE.** Where the evidence is sufficient to support the verdict, and the jury has found for the plaintiff on conflicting evidence, it will be considered on appeal that the evidence in his behalf states the true facts.

2. **Master and Servant: INJURY TO SERVANT: LIABILITY.** Plaintiff suffered injuries resulting from the negligent manner in which lifting tongs were attached by A, an employee of defendant, to a rail which was being unloaded, and from a negligent order by defendant's foreman that he hurry and take hold of the rail in order to guide it to the ground. *Held,* that since the negligent order given by the foreman concurred with the negligence of A, the defendant is liable, and it is not material whether A was a fellow servant of plaintiff.

3. **Appeal: EXCLUSION OF EVIDENCE.** A judgment will not be reversed on account of the erroneous exclusion of evidence, if the party complaining is permitted at another point in the trial to prove the same facts.

4. **Damages.** The amounts provided for in the employers' liability act (Laws 1913, ch. 198) as compensation for damages are arbitrary sums fixed by the legislature, and may not be taken as a standard of comparison or recovery in an action for injuries suffered before its enactment.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Gurley, Woodrough & Fitch, contra.*

LETTON, J.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant in ordering the plaintiff, one of its workmen, to do an alleged dangerous act. Plaintiff recovered, and defendant appeals.

The facts alleged by the plaintiff are that on September 14, 1912, he was employed by the defendant as a member of what was called the "screw gang," which was engaged in sawing, laying and lining rails on defendant's track, and at that time the defendant was laying new rails on a double track, replacing the old tracks. A crane car and a car-load of rails were brought to the place where the new track was being laid. These rails were hauled on a flat car operated by an electric motor. The crane was operated by an electric motor and was used to unload rails. Plaintiff was directed by the foreman to leave his work of lining rails and to help unload the rails from the flat car. He was also ordered to take hold of the east end of the rail which was being unloaded for the purpose of guiding it to the place where it was to be laid. The rail was about 31 feet long, and weighed about 3,000 pounds. It was alleged that, in order that the rail be unloaded in a reasonably safe and prudent manner, it was necessary that the crane hook be attached to the center of the rail, so that it would be balanced when lifted, and when so balanced it could be guided with safety by the men guiding the rails, and that the defendant negligently caused the hook to be attached to the rail so that it would not be balanced when lifted, and attached it in a loose, insecure and unsafe manner so that it had an insecure grip on the rail, which was very dangerous for any one to take hold of for the purpose of guiding it to the ground; that the danger was well known to defendant and its foreman, although not known to plaintiff or obvious to him, or in any way explained to him; that, in obedience to the order of the foreman, plaintiff took a firm hold on the west end of the rail in order to guide it; that the rail was lifted by the crane, and that, by reason of the fact that it was improperly and insecurely

hooked, the hook failed to hold the same, allowing the rail to fall upon plaintiff, knocking him to the ground, breaking the bones of his arm, necessitating its amputation.

The answer is a denial of the acts of negligence alleged, and a plea that whatever danger was incident to the unloading of the rails was obvious and was known to the plaintiff, and that he could have avoided the injury by the exercise of reasonable care. It is also alleged that all persons engaged in the operation of unloading were fellow servants, and that the injuries received were due to plaintiff's own negligence and that of his fellow servants.

The evidence on behalf of the plaintiff shows that he was an Italian, 33 years old, who had been working for some time on the street railway track. His duties were to lay rails, straighten them up, and cut off the ends when necessary to make them fit; also to draw the spikes and take up old rails. On the day of the accident he was working under a foreman named Christianson, laying a new track near the old one. A crane car came up with a flat car carrying rails. The foreman called to Russo to help his coworkman Ruberti unload the steel. The rails were unloaded by being grasped by a pair of tongs operated by the crane, the proper method being to place the tongs about the middle of the rail so that it would balance when lifted, to swing it clear of the flat car, and then for one man stationed at each end to take hold of the rail and guide it to the ground. As plaintiff reached the flat car the foreman told him to hurry because there was a passenger car waiting. The tongs were attached by a workman on the flat car in such a manner that the rail did not balance, and as it swung out and as plaintiff was reaching up for it, it slipped from the tongs, struck him and threw him down, and fell upon and crushed his left arm so that it became necessary to amputate it near the shoulder.

It seems plain that the accident occurred through the carelessness of Anderson, one of the two men working with the crane, in placing the tongs at such a point upon the rail that it failed to balance, or nearly do so, and the con-

current negligence of the foreman in hurriedly directing the plaintiff to take hold of a rail which was in such a dangerous and insecure condition.    Plaintiff stood on the ground below the level of the grade close to the flat car, the floor of which was higher than his head.    The foreman stood back in such a position that the manner in which the rail was attached and swung was, or should have been, apparent to him in the exercise of ordinary care.   The rail was a curved rail, which is shown to be more difficult to unload than an ordinary straight rail and to demand more care.

The evidence for defendant tended to prove that the tongs were placed very close to the center of the rail; that it was necessary with heavy rails that, if they were swung from the center, the ends should be taken hold of by men upon the ground so as to prevent their tipping and sliding, and that this rail was properly swung from the top of the flat car, and that this rail would not have slipped if Ruberti had taken hold of one end of it while the plaintiff was taking hold of the other.    It also tended to prove that the men employed in the screw gang, the spike gang, those unloading rails, and the crane crew, which was engaged in bringing rails from the yards and attaching the tongs and operating the crane, all belonged to what was known as the steel gang, and were fellow servants, and were all under the direction of foreman Christianson.

Twelve errors are assigned by the defendant as grounds for reversal.  The first is that the court erred in permitting a witness to testify that he had seen a rail fall out of the hook on former occasions, and that the foreman was standing where the witness supposed he could see it.    We see nothing prejudicial to the defendant in the admission of this testimony.   There is no proof that the foreman knew of the fact, and, even if he had known, we cannot see how the testimony could have affected defendant adversely.

The next assignment is that the court erred in excluding testimony of the witness Thomas to show that Anderson was in the steel gang under the same superintendent as Russo and this witness.    These questions were ruled out

as not being proper cross-examination.    The defendant was permitted at another point in the trial to show these identical facts, and therefore cannot have been prejudiced.

After the same witness had testified as to the make up of the screw gang and the spiking gang and the steel gang, the defendant sought to show on cross-examination that the crane men belonged to the steel gang.    This was objected to as not proper cross-examination.    The court then said:  "He has stated what he considers the steel gang,— the ten men there."    It is strongly urged that it was error for the court to put its interpretation upon the previous answers of the witness and to exclude this testimony.    The witness had stated a moment before that Christianson was foreman of the spike gang and the steel gang.    When he was asked, "Did he have the whole steel gang  *  *  *  or just the spiking gang?" he answered, "Ten men;  *  *  * that was all," and that Russo was one of the ten.    This complaint is therefore without merit.

The next assignment is that the court erred in refusing to direct a verdict for the defendant.    There was sufficient testimony to go to the jury on the point whether the failure to properly attach the tongs and the negligent order given by the foreman were the proximate cause of the injury. The evidence is not so clear that the failure of Ruberti to take hold of the rail was the cause of the accident as to justify the court in directing a verdict upon the ground that it was caused by the negligence of a fellow servant.

The remaining assignments apply to the giving of certain instructions.    A number of these are in no wise subject to the criticisms of defendant.    Whether the giving of the others was erroneous depends upon the evidence in the case, and, as we have already determined that there is sufficient evidence to sustain the verdict, the instructions are not subject to the objections made.

We find it unnecessary to consider and distinguish cases cited by the defendant, for the reason that the facts of each particular case determine the question for that case. A number of cases are collected in the opinion in the case of *Union P. R. Co. v. Doyle,* 50 Neb. 555, which express the

views of this court as to who are vice-principals, and the liability of an employer for injuries resulting from a negligent order given by one holding such a position.

The negligent order of the vice-principal to take hold of the rail which was improperly and negligently secured by Anderson was the proximate cause of this injury, and the case falls within the rule of *Rathjen v. Chicago, B. & Q. R. Co.*, 85 Neb. 808.

It is complained that the judgment for $6,910 is so excessive as to appear to have been the result of passion or prejudice; that under the employers' liability act the compensation for the loss of an arm would be $1,290, and that therefore the verdict and judgment is five times as large as should have been awarded. The employers' liability act sets an arbitrary standard of recovery fixed by the legislature. The amounts provided for therein may be in part predicated upon the assumption that prompt payment of a smaller sum made without the delays, costs and expenses of prolonged litigation is better for all parties than fuller compensation subject to such contingencies; but of this we are not advised, and are not entitled to consider the motives of the legislature. Russo is a young man who will be compelled to go through life with only one arm. He was earning $624 a year. The loss of his arm has made it impossible for him to continue in his former line of employment or to perform any other work requiring the use of both arms, his pain and suffering were intense, and after the arm had been amputated a subsequent operation became necessary to remove decayed bone. A similar verdict was supported in the recent case of *Henry v. City of Lincoln*, 97 Neb. 865.

We find no prejudicial error, and the judgment of the district court is therefore

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.