CLARA M. BROWN, ADMINISTRATRIX, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 18, 1915. No. 18182.

1. Master and Servant: DEFECTIVE APPLIANCES: NOTICE. An employee is not chargeable with notice of defects in the machinery or appliances used in the business, unless the observation and inspection of such machinery or appliances is within the line of his duties, or the defects are obvious.

2. ———: APPLIANCES: DUTY OF MASTER. An employer is bound to exercise reasonable care to furnish his employees with a safe place to work, under the conditions and circumstances of the employment, and the employer is negligent if the employment is rendered unsafe by reason of defects in the machinery or appliances used therein, which defects were known to the employer, or would have been known if he had used reasonable diligence under the circumstances.

3. ———: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. In an action for damages on account of negligence of defendant, the plain-

tiff cannot recover if he himself was also guilty of negligence which contributed to the accident which caused the damage. The burden of proof is upon the defendant to establish contributory negligence on the part of the plaintiff. Such question is peculiarly for the jury, and the verdict thereon will not be disturbed unless clearly wrong.

4. ——: ——: INSTRUCTIONS. In such action for damages alleged to have been caused by a defect in the machinery or appliances furnished by the defendant employer, it is erroneous to instruct the jury that the employer is bound to furnish his employee a safe place to work. The duty of the employer in that regard is to furnish a place to work reasonably safe under all the conditions and circumstances of the employment. But the judgment will not be reversed for such error, if such instruction is immediately followed by a full and correct explanation of the meaning and use of the expression "safe place to work," and it appears from all of the instructions that the jury has not been misled by the error complained of.

5. Appeal: SUFFICIENCY OF EVIDENCE. Upon examination of the evidence indicated in the opinion, it is found that the verdict of the jury upon the several questions of fact is not so clearly unsupported by the evidence as to require a reversal. ·

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*William H. Hatteroth* and *H. H. Bowes, contra.*

SEDGWICK, J.

Walter T. Brown was a lineman in the service of the defendant company. He, with other linemen, was engaged in placing an additional cable under the Union Pacific bridge over the Missouri river between Omaha and Council Bluffs. While they were working 40 or 50 feet above the ground, Brown fell and was instantly killed. The plaintiff, as administratrix of his estate, brought this action in the district court for Douglas county, alleging that the accident was caused by the negligence of this defendant. She recovered a verdict and judgment, and the defendant has appealed.

The plaintiff alleged in her petition: "That the injuries to and death of said Walter T. Brown were caused by the carelessness and negligence of the defendant, particularly in that (a) the said defendant was negligent and careless in permitting the cable or wire that broke and gave way to be and become old, rusty and worn out; (b) the said defendant failed to furnish a support or scaffold of sufficient strength for the use of said Walter T. Brown while performing his duties as such lineman at the time he fell as aforesaid; (c) the said defendant failed to warn said Walter T. Brown of the unsafe condition of said cable or wire that broke and gave way; (d) the defendant failed to have and maintain under the support, where said Walter T. Brown was working, any scaffold, staging support or other device for the purpose of preventing the said Walter T. Brown from falling to the ground in case of accident to the support on which he was standing while performing his work."

For answer the defendant denied that "the cable upon which Walter T. Brown was situated at the time of the accident described in plaintiff's amended petition broke, or that there was any movement of said cable not reasonably to have been expected by the said Walter T. Brown, and denies that it was negligent or careless in failing to provide proper safety appliances for the said Walter T. Brown, and denies that at the time of said accident said Walter T. Brown was at a place where he was required to be in the performance of his work, or that said Walter T. Brown was directed or required to work in an unsafe place." It also alleged that at the time of the accident the "said Walter T. Brown was crawling along the top of swinging cables between the cross-arms by which said cables were supported. Defendant alleges it was no part of the duties of the said Walter T. Brown at any time to crawl along said cables in the manner above described; that said Walter T. Brown had been forbidden by the defendant to go onto and along said cables, and said Walter T. Brown was given positive and explicit orders not to travel over or go upon said cables between crossarms; that

said Walter T. Brown was possessed of ample experience and knowledge of his work to fully apprize him of the danger in so doing. Defendant further alleges that, notwithstanding repeated admonitions given by the defendant as above set forth, and although a safe method existed for traveling between the crossarms upon which said Walter T. Brown was engaged in working, said Walter T. Brown carelessly, negligently, and wilfully, and recklessly crawled out upon said cables in the manner aforesaid. Further answering, defendant alleges that Walter T. Brown was provided with a belt such as is used by linemen for their protection while engaged in work of the character of that in which the said Walter T. Brown was engaged at the time of the accident; that said belt was good and sufficient protection to Walter T. Brown in pursuance of his said duties; that said Walter T. Brown had been directed to use said belt when engaged in said work; that the said Walter T. Brown was perfectly familiar with the use of said belt; and that at the time said Walter T. Brown was injured the use of the safety belt was necessary and practicable; that said Walter T. Brown carelessly, negligently and wilfully failed to use said safety device, thereby causing the injuries complained of, although said safety device would at said time and place have been good and sufficient protection to the said Walter T. Brown, had he obeyed instructions concerning the use thereof."

The defendant denied the plaintiff's allegations of negligence on the part of defendant. The defendant's allegations of contributory negligence were denied by the plaintiff.

1. The first serious question presented is whether the evidence is sufficient to justify the finding of negligence on the part of the defendant which was the proximate cause of the accident. There were several cables already in place a few inches apart on oak crossarms. It was the custom of these linemen to stand or sit upon these cables while "tying in" another; that is, fastening another cable near them upon the same crossarm. Mr. Potter, another lineman, was working upon this cable, fastening it at an-

other crossarm 40 or 50 feet from the crossarm where the deceased was or had been at work. He was sitting upon the cables. When the guy wire broke, the cable "broke loose from the insulation," and there was such a disturbance of the cable on which he was sitting that it was with difficulty that he saved himself from falling. Near the place where these men were working the cable turned to the side and downward to reach to the power house. The purpose of the guy wire was "to hold the strain to keep the slack from pulling around the short corner of the two crossarms. * * * They are not supposed" to hold the weight of a man, but "do, though, lots of times." If the deceased was relying upon this cable, as Potter was, the movement of the cable was sufficient to cause his fall. Any weight on the cable "would have the effect of putting a strain" on the guy wire. The defendant, of course, knew that the linemen relied upon the cables as they did. The guy wires were evidently supposed to have sufficient strength to resist this strain. The guy wire had been in position for several years. "One end of it was very rusty. In fact, it was rusted entirely at one end." The evidence justifies the finding that the guy wire was defective. At this point the defendant suggests that the linemen should have known this; that it was their duty to report any such defect. It would seem to be the duty of any employee of the company to report such a condition if observed. But the proper inspection of these wires is of so much importance that it might be made the special duty of competent men. The break in this wire was at some distance from the crossarm at which this lineman was supposed to work, the condition of the wire was not observable from the position of the deceased, and the evidence is not so clear that he ought to have known the condition of this wire as to admit of no other conclusion. On the other hand, the evidence will support the finding that the defendant might, and ought to, have known that this wire was insufficient to support the strain that might reasonably be expected to be put upon it. The witnesses, as to plan and arrangement of these complicated wires, supports and appurte-

nances, were mostly linemen familiar with their work, but not experts in planning or explaining these things. There are photographs and blueprints in the record that are curious and somewhat instructive to ordinary men, but would no doubt be more interesting to experts. Under these circumstances it may be that the jury failed to get a full understanding of the situation. It is doubtful whether the court is more competent. And with some hesitation we conclude that we ought not to reject the findings of the jury that the defendant was negligent in allowing this guy wire to remain in this condition, and that this negligence was a proximate cause of the injury.

2. Another difficult question presented is as to the allegations of contributory negligence on the part of the plaintiff. The place where deceased fell was from 20 to 40 feet to the east of the crossarm upon which he was supposed to be at work. When he had finished his work at that crossarm, he was expected to go down a ladder or "lattice work" to a safe crossing place and proceed to ladders reaching to the second crossarm. The work at the intermediate crossarm was being done by other linemen. The defendant alleges that the deceased, instead of pursuing this safe way, was attempting to "crawl" along the cables to the second crossarm, a distance of something more than 100 feet, and past the station where the other linemen were at work. No witness testifies that the deceased was attempting to do this. But the fact that he had probably finished the work where he was, and especially the fact that his body fell so far from directly below the place he was or had been working, are urged as sufficient evidence that he was attempting to cross over on the cables. Defendant's counsel, on cross-examination, asked a witness of plaintiff whether there were "any obstructions or crossbeams or bars to prevent or in any way interfere with his body falling straight down, perpendicularly." The witness answered: "I couldn't say in regard to that, but I think not." By consent of parties that part of the answer, "I think not," was stricken out as "not proper cross-examination, and calling for the conclusion of the witness."

Judging from the complication of "obstructions, cross-beams and bars" shown in the photographs, it would seem that, without evidence that there were no obstructions, and that the body must have fallen directly to the ground, the evidence is not conclusive that the deceased was attempting to cross over on the cables, especially since his next work would be at the second crossarm, and he would have to pass the linemen working at the intermediate station. The jury have found that the defendant's evidence upon this point is not sufficient, and it is not so conclusive as to require us to reject that finding.

3. The deceased was provided with a life belt, which was fastened around his person, and could have been so attached to a cable or other support as to have prevented his fall. But the evidence comes far short of establishing that he was so situated that he could, and ought, if exercising reasonable care, avail himself of that means of safety. We cannot say from this evidence whether he was still at work "tying in the cable," or had finished that and was preparing to go down.

4. One of the court's instructions to the jury was: "It is the duty of the employer to furnish to his workmen a safe place to work, and it is the duty of the employer to inform him of all latent dangers connected with the employment, and, where the place and kind of work to be performed is hazardous and dangerous, to furnish said employees with a safe place in which to perform that work. If you believe from the evidence that the guy wire was not safe, and that Walter T. Brown was required to work on the feeder cable, which was supported in part by the guy wire and that said guy wire had been in that position for four years, and was rusted and frazzled at the end, and that defendant knew of this condition, or, by the exercise of ordinary care, could have known of it, then you are instructed that it was negligence in the defendant in not finding out whether or not the said guy wire was safe, and negligence on the part of defendant to instruct Brown to work in a position where he would necessarily have to place part of his weight upon said feeder cable to which said guy wire was

attached, and the plaintiff would be entitled to recover in this case, unless you find from the evidence that said Walter T. Brown was guilty of negligence which directly contributed to the injury complained of."

This instruction was clearly erroneous, and was especially dangerous in a case of this kind. It is impossible that linemen employed as these men were can have a place to work that is absolutely safe. If it is reasonably safe, considering all of the circumstances and the nature of the employment, that is all that can be demanded. But this instruction repeats the statement that the employee is entitled to a safe place. While the word "safe" will not admit of comparison, still the idea of safety is always comparative. There is no such thing as absolute safety in this world. If the instructions of the court, taken all together, make so plain the sense in which the word safe is used in the instruction quoted that the jury would not probably be misled thereby, the error is without prejudice. The only questions of negligence on the part of the defendant which the court submitted to the jury were as to this guy wire, its breaking, and its consequences. All other questions of defendant's negligence were determined by the court. The main part of the instruction tends to show in what sense the word is used, and the court also told the jury: "You are instructed that the defendant was not an insurer of the safety of Walter T. Brown while he was engaged as a lineman and doing the usual work of a lineman. * * * If you find from the evidence in this case that any defect in the stay wire that broke at the place where it broke was a latent or hidden defect not known to defendant, and that could not reasonably have been discovered or known to it in the exercise of ordinary care, no liability would exist in this case on the part of said defendant by reason of the fact that said stay wire broke." The jury must have considered that, if the evidence showed that the defendant had done the things so plainly specified in these instructions, it had furnished the plaintiff with a safe place to work, within the meaning of that word as used in the instruction complained of.

Other instructions are criticised, but, taken as a whole, we cannot say that they were erroneous to the prejudice of defendant. We cannot extend this opinion, already too long, for a detailed discussion of them.

The questions involved in this case have presented unusual difficulties, and perhaps they are not free from doubt. Our conclusion is that there is no such prejudicial error, and the verdict is not so clearly wrong, as to require a reversal. The judgment is

AFFIRMED.

ROSE, FAWCETT and HAMER, JJ., not sitting.