CHARLES E. CHURCHILL, APPELLEE, v. PENNSYLVANIA COMPANY, APPELLANT.

FILED MAY 3, 1919. No. 20536.

Appeal: EVIDENCE: SUFFICIENCY. Where negligence is fairly inferable from the evidence, and that it was the proximate cause of damage complained of, the verdict of the jury will not be set aside for insufficiency of the evidence, where reasonable men may draw diverse inferences from the evidence adduced.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*Brome & Ramsey, contra.*

ALDRICH, J.

This is an action at law brought by the plaintiff against the defendant to recover damages resulting from the death of a thoroughbred cow.

This cow was shipped from Mansfield, Ohio, to Chicago, Illinois, over the Pennsylvania route, and from Chicago to Hartington, Nebraska, over the Chicago & Northwestern Railway Company's and the Chicago, St. Paul, Minneapolis & Omaha Railway Company's roads. The shipment was made in extremely hot weather, starting from Mansfield, Ohio, on the 27th day of June, and arriving at Hartington, Nebraska, on the 3d of July. The animal died before it reached its destination. Defendant insists the death of the animal was caused by extremely hot weather and natural causes. The plaintiff claims that its death was due solely to lack of water.

Then here we have an issue of fact simply, and, being such, it is purely a question for the jury to consider. Evidence of the plaintiff, practically undisputed, shows that the cow in question arrived from Mansfield, Ohio, in the Chicago stock-yards, in good healthy condition, and that she was shipped out of the stock-yards at Chicago at midnight, June 28, 1916, and arrived at East Clinton, Illinois, at 10 a. m. on June 30, 1916, being a shipment of 34 hours. During this trip it was intensely hot and sultry, and the record shows that the animal did not receive any water from the time she left Chicago until she arrived at East Clinton, Illinois. The record shows that at East Clinton, Illinois, it was the duty of the bill clerk to make a record of the feeding and watering of stock, and that he did make a record of feeding and watering this cow in question, and the record shows that the cow was fed and watered at East Clinton, Illinois, and thus it is admitted that the animal went without water during this intensely hot weather for a period of 34 hours. The record further discloses that the train carrying this cow arrived at East Clinton at 10 a. m. and that this was the busiest time for the bill clerk, and that some other employee watered the stock and reported to the clerk,

103 Neb.—34

and the record shows that the animal was watered. The trouble with this sort of evidence is that it was repeated, or told, to the clerk, that they had watered this animal in question. They told this to the clerk through the window, or came into the office and said so; but the clerk himself had no actual or personal knowledge as to whether or not the animal was watered. The only thing he knew about it was that some one, another employee, reported to him. There is no evidence convincing in its character that the cow in controversy was watered at East Clinton, Illinois. The car containing this animal left East Clinton at 11:50 a. m. on June 30, 1916, and arrived at Belle Plaine at 6 o'clock on the same day. It is not claimed that food or water was given it during this haul. It is in evidence that the car containing the animal in question left Belle Plaine at 6:46 p. m. on June 30, and arrived at Boone, Iowa, at 11:40 the same day. There is no evidence that during this haul the animal was either fed or watered, but remained at Boone until the morning of July 1, 1916. There is no evidence, or claim made, that the animal received either feed or water while in the yards at Boone. Thus we are led to the conclusion from the evidence that nothing but carelessness and neglect caused her death. It is safe to say that, had the defendant exercised the same care and diligence during the latter part of the journey that it did from Mansfield, Ohio, to Chicago, there would have been no bad results. The defendant knew of the animal's value, and of the importance and necessity of proper watering during this intensely hot weather, and, knowing these things, failed wholly and utterly to give the animal any care at all. The fact is, an individual treating a domestic animal as this company treated this cow in question would have been prosecuted for cruelty to animals.

Reliable veterinarians had different theories. The defendant's veterinarian claimed the cow died of over-

heat; another claimed that the *post mortem* showed she died from lack of water. The heat may have been a contributing cause, but it is also true that a scarcity of water from which the cow suffered would make the heat infinitely more effective and more debilitating than had she had plenty of water. The evidence establishes the fact that, had the cow been properly watered, she would have stood the latter part of the trip as well as she did the first part. The evidence is amply sufficient that the death of the animal resulted from negligent caretaking. The defendant knew of the necessity of plenty of water to an animal caged in a box car in as intensely hot weather as it was on this occasion, and the jury, in our judgment, had ample evidence to warrant it in finding that the animal died from the negligence of the defendant caused by not giving it proper care during its long shipment.

The verdict and finding of the jury is therefore

AFFIRMED.

ROSE and SEDGWICK, JJ., concur in affirmance.

LETTON, J., not sitting.