JOE CUEVAS, ADMINISTRATOR, ET AL., APPELLEES, V. YELLOW CAB & BAGGAGE COMPANY, APPELLANT.

4 N. W. (2d) 790

FILED JULY 3, 1942. No. 31293.

*Gaines, McLaughlin & Shoemaker*, for appellant.

*Ralph Bremers* and *George H. Merten*, for appellee Cuevas.

*Alfred A. Fiedler, pro se.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action, brought under the Lord Campbell's Act, sections 30-809 to 30-810, Comp. St. 1929, to recover damages for the death of Sabino Rivera, aged 32 years, as a result of being struck by a cab of the defendant. The plaintiff sues as administrator of his estate. The intervener sues as the representative of the father of the deceased.

The defendant appeals from a judgment against it and presents 14 assignments of error which it reduces in the argument to the propositions that there was no evidence of negligence on its part which was the proximate cause of the accident, that the contributory negligence of deceased was more than slight and barred recovery as a matter of law, and that the evidence of the earnings of the deceased was inadmissible and inadequate. The first two propositions were presented by motions for directed verdict at the close of the plaintiff's case in chief and again when all parties had rested.

There is little dispute about the facts of this case. For the purpose of considering these motions, where dispute exists it will be noted and resolved in favor of the plaintiff.

The accident took place on March 1, 1940, about 8:50 p. m. in the city of Omaha. The deceased died as a result thereof early the following morning. The location of the accident was at Thirteenth and Mason streets. Thirteenth

street runs north and south, and at the point of the accident is 60 feet wide between the curbs and provides a parking lane on either side and four lanes for moving vehicles, two lanes in either direction. The street has a 3 per cent. down grade to the north. Mason street runs east and west. It is 60 feet wide east of Thirteenth and 30 feet wide west of Thirteenth, with the center of the street a continuing straight line. The pedestrian lanes across Thirteenth street are not marked, but are so located that the one across Thirteenth from the south side of Mason runs slightly northwest to southeast. There are street lights on Thirteenth at the southwest and northeast corners of the intersection.

At the time of the accident the night was dark; the street lights were burning. There had been some rain; the air was misty or foggy and the pavement was wet or "greasy."

At the time and place of the accident there were cars going south in both lanes, and two witnesses testify that the lights of the car on the lane nearer the center of the street were very bright. There were also cars going north in both lanes. The defendant's cab was going north in the lane nearer the east curb or moving into that lane, and no car was ahead of it. It was traveling on that part of Thirteenth street that is paved with brick. There was a second car, some 10 or 15 feet behind the defendant's cab, but to its left or in the lane nearer the center of the street.

The eyewitnesses to this accident were the drivers of these two north-bound cars, who testified for the defendant, and the driver of a car that was approaching Thirteenth on Mason from the east and whose car was just stopping before entering Thirteenth. This latter driver testified as plaintiff's witness.

Plaintiff's witness testified that he saw what he thought "was an old man step into the street and come across, and there was south-bound traffic, two lanes, coming from the north, and I could see they were just under the viaduct when he started to cross the street, and he kind of had his head down a little, and, oh, I don't know what you would say—kind of half running or a half walk, kind of hurrying

to get out of the way of that traffic, which he did. He cleared that traffic in plenty of time. Then he kept on coming where the cars were—there is a kind of a little raise there where they come over the hill, and they swamped right on down upon him without any horns blowing or anything." The "viaduct" referred to above was some 200 feet to the north of the intersection. He further testified that he saw the defendant's cab when it was about 100 feet to the south, and recognized it as a Yellow Cab when it was about 20 feet "away from the man that was running across the street." He described the deceased's movements as "a hurry-up walk or a slow run; he was in a hurry." On cross-examination he testified that deceased had "his head down when he came out from the curb" and "continued crossing the street with his head down." He further testified that the south-bound traffic reached the intersection first.

The defendant's driver testified that he first saw the deceased when he was 15 to 20 feet ahead of him and that at that time his back was bent over and his head down, that he did not look up and that the deceased took about two steps before the cab struck him. The driver of the car following the defendant's cab to its left testified that he first saw the deceased "as he passed in the line of my lights," that he was at that time "near the middle of the intersection; he was traveling to the northeast in a kind of a crouch and a run," "was bent way over, kind of toe-hopping, bent over in a kind of a half run and half walk" and did not "look to the south at all." The deceased was dressed in dark clothes.

The left front light of defendant's cab was built in the fender. The lens was broken, the rim bent, and the bumper crushed. There does not seem to be any dispute but that that fixes the point of impact of deceased's body with the cab. The dispute in the evidence is as to the point of impact with reference to its location on the street. Plaintiff's witnesses testified that defendant's driver pointed out the place of the impact at a point about 18 feet west of the east curb line of Thirteenth street and within the pedestrian lane. This puts the defendant's cab in the east of the two driving

lanes and in a lane where he had a right to be. The deceased's arm was caught in the bumpers. He was carried by the car to the point where it stopped on Thirteenth street, across Mason street. The plaintiff's witnesses fix the distance from this point of impact to the place where deceased's body was after the cab stopped as 96 feet, 6 inches. Plaintiff's witness testified that the speed of the cab was not slackened nor its course changed during the 20 feet it traveled before the impact and testified to a conclusion that the brakes were applied at the time of impact. Defendant's witness testified that he applied the brakes when he first saw deceased and that his cab slid thereafter to the right.

The only direct evidence admitted in plaintiff's case in chief as to the speed of defendant's cab before the impact was that of plaintiff's witness who testified on direct examination that the driver said he was not going very fast, and that brought out on the cross-examination of a police officer that he asked the cab driver as to his speed and that he said he was going between 20 and 23 miles. Defendant's two witnesses testified that the cab and the car going north were traveling at from 20 to 25 miles an hour. There was no expert testimony offered as to the probable speed of the cab based on the distance it traveled after the impact under the conditions then existing, nor is there evidence as to how quickly the cab could have been stopped under the existing conditions.

The ordinance of the city of Omaha requires a driver of a vehicle to yield the right of way to a pedestrian crossing the street within any marked cross-walk or within any unmarked cross-walk at the end of a block, except where traffic officers or signal lights are in control. For the purpose of considering defendant's motion for a directed verdict, deceased must be held to have been within that unmarked cross-walk at the point of the impact and defendant's driver was required to yield the right of way. See, also, Comp. St. Supp. 1939, sec. 39-1148. The ordinance also provides: "No person shall drive or operate a vehicle or street car upon a street at a rate of speed greater than is reasonable

and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger life or limb of any person." These provisions go to the question of the negligence or lack of negligence of the defendant.

We do not determine the question of the sufficiency of the evidence to establish a jury question as to the negligence of the defendant.

We have here this situation from the undisputed evidence. The deceased was in a place of safety on the west curb of Thirteenth street. He left that place of safety and started across the street in front of on-coming traffic from the north. "He cleared that traffic." He was again in a place of comparative safety in the center of the street. He did not stop there; "he kept on coming where the cars were" that were going north, bent over, head down, not looking to the south; "half running or half" walking he placed himself in the path of the cars coming from the south. The point of impact of deceased with the left front fender of defendant's cab clearly shows that, so far as defendant's cab was concerned, the deceased was in a place of safety up until the last two steps which he took. The evidence is clear that he was not on the east half of the street until he came within the lights and vision of the defendant's driver and the driver of the other north-bound car, which was only a moment before the fatal impact. The evidence of the plaintiff establishes that the lights of defendant's cab were visible for at least 100 feet south of the point of impact, and at a time when deceased was in no danger from the defendant's cab.

The case of *Belville v. Bondesson,* 130 Neb. 926, 266 N. W. 901, was the case of a pedestrian crossing a street when he was struck by an automobile. There this court said: "In examining the question of plaintiff's contributory negligence, it is necessary for us to formulate some idea as to what an ordinarily cautious and prudent man would do under like circumstances. We think he would act about as follows: On reaching the intersection, he would look both to

his right and to his left. Seeing that no cars were coming from the right that would endanger him before reaching the center of the street and determining that he could safely cross in front of cars coming from his left, he would proceed, being watchful of the cars whose traffic lanes he was crossing. Arriving in the center of the street, he would devote the greater part of his attention to cars coming from the south whose traffic lanes he would cross in reaching the other side of the street, being alert, however, at all times, to the possibility that a car might appear where normally it would not be expected."

Here the deceased looked neither to the right nor the left after starting to cross the street; he was not "watchful of the cars whose traffic lanes he was crossing" nor did he at the center of the street "devote the greater part of his attention to cars coming from the south." In short, he did not do the things that "an ordinarily cautious and prudent man would do under like circumstances."

This court has said: " 'Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' 45 C. J. 942. See *Eaton v. Merritt*, 135 Neb. 363, 281 N. W. 620. Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence. *Welsh v. City of South Omaha*, 98 Neb. 148, 152 N. W. 302." *Klement v. Lindell*, 139 Neb. 540, 298 N. W. 137.

In *Travinsky v. Omaha & C. B. Street R. Co.*, 137 Neb. 168, 288 N. W. 512, this court said: "We think that, as a matter of law, the last movement of the deceased constituted more than slight negligence contributing to cause the accident, and that the case is controlled by the decisions of this court in *Troup v. Porter*, 126 Neb. 93, 252 N. W. 611, and *McDonald v. Omaha & C. B. Street R. Co.*, 128 Neb. 17, 257 N. W. 489. In each of these cases the pedestrian suddenly stepped from a place of safety in close proximity to a moving

vehicle directly into its path, and this court held that, as a matter of law, such act was negligence which was more than slight, justifying the trial courts in refusing to submit the cases to the jury."

In *Doan v. Hoppe,* 133 Neb. 767, 277 N. W. 64, we cited with approval the following rule from *White v. Davis,* 103 Cal. App. 531, 284 Pac. 1086: "There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, when he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

Plaintiff contends that a proper conclusion may be drawn from the evidence that the deceased was looking. We find nothing in the evidence upon which such an inference or conclusion may be properly based. However, assuming that deceased looked, that contention also has been answered in the *Travinsky* case, where this court discussed the rule just quoted from *White v. Davis, supra,* and said:

"The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision.

"In the instant case we think the fact that plaintiff's deceased looked and saw the car and was conscious of its motion and proximity made his act of suddenly stepping into its path negligence of a higher degree than if he had done so without looking."

Plaintiff further argues that excessive speed is shown by the distance the cab traveled after the impact. It should be

noted that the evidence is that the brakes were applied and that the car "slid" and that there is no evidence as to the effect sliding on wet pavement would have on the distance a car would travel. That contention was also answered in the *Travinsky* case, as follows: "Conceding excessive speed to have been proved, it would seem that since the deceased observed the approach of the car he must have had some relative impression of its speed and that the higher that impression the greater his negligence in suddenly moving from a place of safety into its path."

The conclusion is inescapable that the negligence of the deceased contributed to, if it was not the proximate cause of, the accident, and that he was guilty of such contributory negligence that any recovery is barred as a matter of law. The trial court erred in refusing to direct the jury to render a verdict for the defendant at the close of all the evidence. The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

PAINE, J., dissenting.

This case presents to this court for determination the question of the relative rights of a pedestrian and an automobile, when the pedestrian is proceeding across an arterial highway at the proper place for making such crossing.

If there is no electric signal light, or traffic officer momentarily stopping traffic, which rushes on in the arterial without end, under what conditions can the estate of a pedestrian recover if our holding stands in this case that, having proceeded from a place of safety, and being killed in attempting to cross such arterial, his own conduct in leaving such place of safety precludes his recovery? When could a pedestrian ever safely cross such a busy arterial street?

Sabino Rivera, a Mexican, was walking across an intersection in Omaha, and was killed by being struck by a Yellow Cab of defendant corporation. Joe Cuevas, administrator, brought action under Lord Campbell's Act for the benefit of widow and children. Verdict of $5,000 and $304 for funeral expenses was returned for the administrator. De-

fendant appeals from judgment of $5,304 entered thereon.

The third amended petition filed in this case alleged that on March 1, 1940, at about 8:50 p. m., Sabino Rivera as a pedestrian was crossing Thirteenth street in Omaha at its intersection with Mason street, proceeding from west to east on the south side of Mason street; that when he had reached a point about 15 feet from the east curb of Thirteenth street he was struck by a taxicab, driven by Francis D. Morlan, with great force and violence, and was pinioned upon the left front part of the taxicab, so that he was dragged a distance of 96 feet; that he sustained a fracture of the skull and numerous other fractures, bruises and abrasions, from which injuries he died the following day.

Plaintiff further alleges that the negligence of defendant in the operation of said taxicab was the direct and proximate cause of Rivera's death; that said carelessness and negligence consisted of the following: That defendant drove said taxicab at a high, dangerous, and unlawful rate of speed, taking into consideration the wet and slippery condition of the street, the rainy and foggy condition of the weather, and the traffic on said street at that time and place; in failing to keep a proper lookout, and failing to observe said Rivera while he was crossing Thirteenth street; in failing to have said taxicab under proper control; in failing to sound any signal or warning; in failing to yield to said Rivera the right of way while he was crossing said street. Generally these allegations were proved by the evidence.

Without setting out instruction No. 9, as given by the court, in full, we find it set out sections from the ordinances of the city of Omaha, as received in evidence, providing in section 16 that the driver of any vehicle *shall yield the right of way to a pedestrian crossing the street* within any marked cross-walk or *within any unmarked cross-walk* at the end of the block, except at intersections where the movement of traffic is regulated by police officers or traffic control signals; and section 40 of the city ordinances, providing a restriction as to speed, that no person shall drive or operate a vehicle at a rate of speed greater than is reasonable and

proper, having regard for the traffic and the use of the road and the condition of the road, nor at such a rate of speed as to endanger life and limb of any person. After giving these two sections from the ordinance, the court, as the final part of instruction No. 9, said: "The right given to pedestrians in the foregoing City Ordinance is not an absolute right which may be exercised under all conditions and hazards, but if to a reasonably prudent person in the exercise of ordinary care it would appear that to enforce his right of way would probably result in an accident, it would then be the duty of such person to use ordinary care to avert an accident, even to the extent of foregoing his right of way, and his failure under those conditions so to forego his right of way when he reasonably could so do, would be evidence of negligence on his part, as the law demands that everyone use reasonable care for their own safety."

Arthur W. Johnson, a witness for the plaintiff, who was a Ford mechanic for the past ten years, was driving in his car west on Mason street, and while making the required stop at Thirteenth street he saw the deceased step from the curb into the street on the west side of Thirteenth street and come across the street. He further testified that he first saw the car which struck the man when it was about 100 feet south of where he had stopped his car, but did not recognize it as a Yellow Cab taxi until it was within 20 feet of the pedestrian, so he waited and watched the cab as it struck the man.

Under the subheading, "Matters Relating to Use of Streets and Highways," in the topic "Evidence," 20 Am. Jur. 130, sec. 124, it says: "Judicial notice is taken of matters commonly and generally known with reference to automobiles and their operation. Such notice will be taken also of the congested traffic conditions upon main highways and the well-known streets in certain districts; the use of the streets and highways during all hours of the day and the night; the frequent violation of traffic laws, particularly the speed laws."

Cases on speed violations are before this court constantly.

In the recent case of *Watters v. McPherson, ante*, p. 607, 4 N. W. (2d) 605, released only on June 19, 1942, it is said in the opinion that sergeant Timmins, who had taken the special traffic course of nine months at Northwestern University, testified that skid marks 60 feet long on a dry pavement indicated a speed of 36 to 37 miles an hour. This fact, taught in a leading university, would not apply exactly to the case at bar, where the pavement was wet and it was raining, for if the wheels skid when the brakes are applied the car will go much farther; but he also testified that an automobile travels one and a half times its speed in feet per second.

In the case at bar, the skid marks were over 96 feet long, on a wet pavement, and certainly indicated that the speed far exceeded what it should have been under all the conditions.

In *Bragdon v. Kellogg*, 118 Me. 42, 105 Atl. 433, 6 A. L. R. 669, it was said: "It is a matter of common knowledge that automobiles are more often driven without any reference to legal speed than in observance of it." (6 A. L. R. 669.)

While the law, as stated in the annotation in 47 A. L. R. 599, supported by many citations, is that, "As a general rule, it may be stated that the rights of pedestrians and automobiles at intersections are mutual and coordinate, neither having superior rights," yet in the case at bar the ordinance just quoted required this taxi to yield the right of way to this pedestrian.

In *McCulley v. Anderson*, 119 Neb. 105, 227 N. W. 321, the plaintiff on a motor-cycle came to a full stop before entering Leavenworth street in Omaha, which was an arterial highway. He then entered the street, and was run down and seriously injured by an automobile proceeding at an unlawful and dangerous speed and on the wrong side of the road, and Judge Rose in writing the opinion said: "Where a motorist on a nonfavored street stops at an intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care

would act in the belief that he has time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so."

Where there is evidence tending to prove both negligence and contributory negligence in an action to recover damages for causing an injury, by wrongful act, the duty of making the comparison under the comparative negligence law is imposed upon the jury.

Judge Eberly stated the law to be: "A verdict of the jury based upon sufficient evidence to support it, and which cannot be said by the court to be clearly wrong, will not be set aside merely because it appears to be against the weight or preponderance of the evidence, as the weight of testimony is for the jury, and not for the appellate court." *Bosteder v. Duling,* 117 Neb. 154, 219 N. W. 896. See, also, *Russo v. Omaha & C. B. Street R. Co.,* 98 Neb. 436, 153 N. W. 510; *Central Granaries Co. v. Nebraska L. M. Ins. Ass'n,* 106 Neb. 80, 182 N. W. 582; *Brown v. Omaha & C. B. Street R. Co.,* 98 Neb. 613, 153 N. W. 588; *Churchill v. Pennsylvania Co.,* 103 Neb. 528, 172 N. W. 366.

"A verdict of a jury in a law action based upon conflicting evidence will not be disturbed unless clearly wrong." *Schindler v. Mulhair,* 132 Neb. 809, 273 N. W. 217.

The evidence discloses that, when the deceased started across this street, he walked out under the street light at that corner, so he could easily be seen. The deceased's first concern was that he should not be struck by the very heavy traffic going south in this arterial street. He hastened to avoid it and safely reached the center of the street. One or two witnesses testify that his head was down, but when a man is walking in the rain he does not hold his head up high, as he glances to the right or left, but glances with his eye under his hat brim. The defendant's taxi was far to the south as he continued on across, and he was in plain sight of the taxi driver, for there was no car between them. The taxi driver's story was that he only saw him just before he struck him. He told the policeman that "the man just loomed up in front of him," and he "didn't see him until he was right on top of him."

Now, let us analyze this driver's evidence. He says the man just loomed up in front and he hit him, but what did he testify that he saw in that instant (?) of time? He testified that he first applied the brakes instantly and slid to the right; that he noticed the man was "bent over," and was "on a slow run or trot," that "his back was bent over," that "his head was down," that "he did not look up," that "his clothes were dark," and that he "had a hat on his head."

To make all of such observations would require several seconds of time, and in the case of *Watters v. McPherson, supra,* it is shown that an automobile travels one and a half times its speed in feet per second. In other words, if the taxi was moving 40 miles an hour it would travel 60 feet in one second.

The jury would be justified in rejecting the evidence of the taxi driver entirely, and in deciding that there was nothing whatever to prevent his seeing the pedestrian a long ways back if he had been paying the required attention to the approaching crossway and the rights of pedestrians thereon.

The jury, in returning their verdict for the plaintiff, were doubtless convinced that the plaintiff's charges of negligence were true, and that (1) the driver drove his taxi at a high, dangerous, and unlawful rate of speed, taking into consideration the wet and slippery condition of the street, the rainy and foggy condition of the weather, and the traffic on said street at that time and place; (2) that the driver did not have his car under proper control; (3) that he did not maintain the proper lookout; (4) that he did not sound any signal horn, nor give any warning; and (5) that he did not yield the right of way, as required by ordinance, to a pedestrian crossing this intersection at the proper place.

Can any one deny that, when a pedestrian is lawfully proceeding on a street crossing at the proper place, and no obstacle intervenes between such person and the driver of an approaching taxi, the duty is imposed on such driver not to run down the pedestrian?

In *Sgroi v. Yellow Cab & Baggage Co.,* 124 Neb. 525, 247

N. W. 355, this court held: "The existence of negligence and contributory negligence in an action for personal injuries is, ordinarily, a question of fact, and where the evidence in relation thereto is such that minds may reasonably reach different conclusions as to their existence, such question should be submitted to the jury."

In my opinion, this case should be ruled by the law stated in these last two paragraphs, and the verdict of the jury and the judgment based thereon should be affirmed.

ROSE, J., concurs in this dissent.