CARRIE KUDRNA, ADMINISTRATRIX, APPELLANT, V. SARPY COUNTY, APPELLEE.

FILED JUNE 16, 1933. No. 28290.

*O'Brien & Powers* and *Grenville P. North,* for appellant.
*Ralph J. Nickerson* and *Patrick & Smith, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day, and Paine, JJ.

Dean, J.

Carrie Kudrna, plaintiff, as administratrix of the estate of her deceased daughter, Ruby Kudrna, brought this action against the county of Sarpy, Mabel Storm, and Roy Downen, defendants, to recover damages which she alleges she sustained by reason of the death of her daughter who at the time was 19 years of age. It is alleged that, on or about July 26, 1931, the decedent, while riding on the running board of an automobile owned by Downen and operated by Mabel Storm, came in contact with a road grader negligently concealed in the weeds upon the highway and that the deceased thereby sustained injuries resulting in her death. After the opening statements of counsel, the action was dismissed as to defendants Storm and Downen, and, at the conclusion of the evidence and upon motion of the county, the jury were discharged and the action was dismissed as against the county.

As grounds for reversal, the plaintiff relies mainly upon the alleged fact that the court erred in discharging the jury and dismissing the action.

In respect of the events leading up to the tragedy, the record fairly discloses that, on or about 7 o'clock on the evening of July 26, 1931, Ruby Kudrna, accompanied by Mabel Storm, met Eddie Sterkel and Roy Downen, pursuant to a previous agreement between the parties, at a point in Omaha. In the course of the evening the parties proceeded to the home of a friend, where it appears that each of them indulged in a glass of beer. Subsequently, they rode about for some time and, about 10:30 or 11 o'clock, they stopped at a school house near Papillion. The boys had with them a mixture of whiskey and soda pop, but it does not appear that any of them, except Downen, imbibed much, if any, of the liquor, and that the liquor was all poured out about midnight. About 1:30 or 2 o'clock, Downen threw away the car keys and

they were not found until about 4:30 or 5 o'clock in the morning. The young people then drove away, stopping for a short time at a filling station for water, and again at a point near a bridge where the boys left the car. It is disclosed that, as a prank, the girls drove away from the boys, with Mabel Storm at the wheel of the car; that she had never before driven alone; and that such fact was known to Ruby.

It appears that some difficulty was encountered in turning the car, and that Ruby thereupon got out and assisted in starting the motor and, in spite of the request of Mabel Storm that she ride inside the car, she persisted in standing on the running board for the return trip to the young men. In descending the hill, the car was driven at the rate of 20 to 25 miles an hour, and it is apparent that Mabel, in negotiating the turn in the road that led to the bridge a short distance beyond, became excited when the brake failed to stop the car. It was at this point that the snow plow, or grader, is alleged to have been left on or near the highway and with which it is alleged Ruby came in contact as the car turned the corner.

The evidence of Mabel Storm is to the effect that she did not know exactly the point where Ruby fell from the running board. The evidence of Sterkel does not clearly show that he actually saw her fall from the car, but he testified that, as the car rounded the corner, Ruby's right leg was sticking out from the running board, and that he saw her coming from the weeds into which she had been thrown and that she fell over in the road. When asked whether Ruby fell from the side of the car as it turned the corner or whether she was scraped off by the plow, Downen answered that, to the best of his knowledge, she must have fallen off, and that she apparently lost her grip on the car as it swung around the corner; that he could see her head and hand protruding over the automobile as she stood on the running board and that she shouted to him; that the car missed the corner from three to five feet, and that the tracks indicated that it missed the plow about a foot and a half or two feet.

One witness testified that he was awakened by the honking of a horn; that he saw the car with the two girls immediately before the accident, and that it was going from 25 to 40 miles an hour; that Ruby was "hollering" and waving her hands above the top of the car as she stood on the running board. Another witness, whose property adjoins the highway, testified that the tracks indicated that the car had made a wide swing at the corner; and that such tracks were approximately two and a half feet from the snow plow, running parallel thereto until they reached a tree. Another testified that the car showed skid marks off the traveled portion of the road and onto the grassy part toward the plow, and that the width between the plow and the traveled portion of the highway was approximately 9 feet, and there is also evidence that the track was about a foot from the plow and that the plow was several feet off the highway. The evidence of another witness was that the plow was visible over weeds growing around it; that the tracks indicated that the car left the traveled portion of the road and went over the fill, but came no closer than 18 inches to the plow. Several members of the coroner's jury examined the scene, and one testified that the tracks were three feet from the nearest corner of the plow, and that it was about four feet from the plow to the traveled portion of the road.

The rule is stated that a county is not required to keep its highways in condition fit for travel for their entire statutory width; its duty being discharged if a width sufficient for travel is kept in proper condition. *Howard v. Flathead Independent Telephone Co.,* 49 Mont. 197. See, also, 5 Thompson, Negligence (2d ed.) sec. 6008; *Moran v. Palmer,* 162 Mass. 196; *Carey v. Hubbardston,* 172 Mass. 106; *Hall v. Wakefield,* 184 Mass. 147. A county has sufficiently discharged its duty when the traveled portion of a highway is maintained in a proper condition, and such county is not liable in damages when a person, negligently riding on the running board of a car,

is fatally injured by being thrown against a snow plow parked some distance off the highway when the car, in negotiating a turn, deviated from the traveled track.

The plow, parked as it was off the traveled highway, was not of itself sufficient to cause injury. The sole and proximate cause of the fatal injury was the negligence of the decedent in placing herself in a position of danger. "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Spratlen v. Ish*, 100 Neb. 844. It was not error for the court to discharge the jury, when the proofs clearly disclosed contributory negligence on the part of the decedent to such a degree that reasonable minds could not find therefrom that such contributory negligence is slight and the negligence of the defendant gross in comparison therewith. *Johnson v. City of Omaha*, 108 Neb. 481. The evidence of the eyewitnesses nowhere discloses that the foot of the decedent was caught on the plow, nor that contact with the plow caused her to be thrown against it, as contended by the plaintiff. It plainly appears that she was thrown from the car as it swung around the corner. We conclude that no right of recovery has been proved. The judgment is

AFFIRMED.