PAUL RITTER, APPELLEE, V. STRUVE P. HERING ET AL., APPELLANTS.

280 N. W. 231

FILED JUNE 15, 1938. No. 30358.

*Chambers, Holland & Locke,* for appellants.

*Charles A. Dafoe* and *Jessen & Dierks, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

GOSS, C. J.

Plaintiff had a verdict and judgment against both defendants for $4,000 for damages for personal injuries and injuries to his car received in an automobile collision, from which they appealed.

(1)

Plaintiff alleged that he was the owner of the car he was driving, and in two causes of action asks for damages for personal injuries and for his hospital and medical expenses in one and for damages to his car in the other.

Defendants filed a joint answer and incorporated therein the cross-petition of Cecil W. Means, the owner of the automobile, driven by defendant Struve P. Hering, for damages suffered to his car.

Each party artfully alleged the facts and charged negligence of the driver of the other car. We do not deem it necessary to state further the pleadings. The situation can be readily understood from the statement of the evidence.

The evidence shows that the collision occurred at the intersection of state highway No. 2 and graveled state highway No. 43, at a point about three-quarters of a mile west of the Palmyra corner in Otoe county. The former is an oil mat road running east and west and the latter starts near Eagle and goes south to the point named and ends there.

Plaintiff, aged 39, a farmer near Cook, Nebraska, had taken his family and some relatives to the state fair on September 10, 1936. The collision occurred on a clear, dry day, at or before 6:30 in the afternoon, at the instant plaintiff drove from No. 43 onto No. 2, intending to proceed east on the pavement. The graveled highway widens out at the intersection so as to allow cars entering or leaving the gravel to do so on a curve. This curve for cars turning east is permissibly larger because there is a filling station at the northeast corner and its grounds are graveled and entered into No. 43. There is a highway stop sign at the west side of No. 43, facing traffic from the north near No. 2, admonishing those entering the latter to stop. There is (as we think may be said to be the conventional practice) no stop sign on the east side of No. 43. There are no stop signs on No. 2, but there are "slow" signs on that highway in the vicinity, admonishing drivers to slow their speed.

Plaintiff testified that, as he was approaching No. 2, and about 200 feet north of a sign "State Highway 200 feet,"

he saw defendants' car about a quarter of a mile east of the intersection coming at a rapid rate of speed, which the witness estimated at 60 miles an hour. The vision of defendants' car was obscured by the filling station as the witness got nearer his turn, and he also testified that he was looking for cars from the west; he slowed down to about 20 miles an hour, the Hering car did not slacken speed, plaintiff applied his brakes and tried to stop "about twenty-five or thirty feet north of the black top." From the testimony of plaintiff, including his marks as to the location of his front wheels, the front of his car was on the north side of the pavement on which defendants' car was going west at the time of the collision. He "was always under the impression" plaintiff's car had stopped before defendants' car hit it. While he seeks to qualify his position by saying that the black top extended over into the gravel of No. 43, it is very apparent from the marks he made on the picture in evidence that the front of his car was over on No. 2 pavement before he stopped. He testified that he never saw the stop sign that guards No. 2 from the traffic that comes in from No. 43.

Others testified to the facts when the collision occurred, but they do not materially change the situation from that given by plaintiff.

At the end of plaintiff's case defendants moved for a directed verdict because the evidence showed that the contributory negligence of plaintiff was more than slight. A similar motion was made at the close of all the evidence; both motions were overruled.

The verdict was returned October 7, 1937, and judgment immediately entered upon it. The next day defendants filed a paper in the case stating on its face, opposite the title, that it was a "Motion for Judgment Notwithstanding Verdict and Motion for New Trial." The preliminary paragraph of the motion omits to state that it is a motion for a new trial, and says in substance that defendants move for an order vacating the verdict and judgment and that the court enter judgment for defendants notwithstanding the

verdict for the following reasons: Then follow 42 paragraphs numbered with Roman numerals setting forth the reasons. In two succeeding journal entries the trial court referred to this pleading as "a motion for judgment notwithstanding the verdict and an alleged motion for a new trial." In the last of these orders the trial court overruled the motion, and defendants gave notice of appeal on that day, January 4, 1938.

The motion contained all the matter necessary for a motion for a new trial except that the first paragraph did not state that it was such. However, as heretofore stated, the title of the motion gave notice that it was intended to include that phase in the motion. This was, at most, a technical error or defect which the trial court might have allowed to be amended, and which defendants requested to do by making the body of the motion include the words "or grant a new trial for the following reasons:" That amendment seemed to be in furtherance of justice, as provided in section 20-852, Comp. St. 1929. But, notwithstanding the motion was overruled by the trial court, there is the following statute which justifies relief to defendants in this court upon the record as it was left after the refusal of the trial court: "The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Comp. St. 1929, sec. 20-853.

The title of the motion on its face stated that it was a motion for judgment notwithstanding the verdict *and* motion for a new trial. The substance of the motion was applicable to both. The failure to state further in the literary composition of the motion was at most a defect in the proceedings, a correction of which, even if it were needed, affects no substantial rights of plaintiff. We are of the opinion that so to rule is in the interests of "the furtherance of justice," and that the district court might well have allowed the motion to be amended, as requested. We fail to

find from the record that the court did not overrule the motion both as one for a new trial and as one for judgment notwithstanding the verdict.

Plaintiff should have known that the paved highway he was approaching on a graveled highway was what is usually called an "arterial" and that those driving automobiles on it had what is generally termed the right of way. Not that such a right of way is absolute, but that it is the usual and customary rule protecting such highways from entry of automobiles from an inferior or subsidiary highway without stopping. If he had looked with care he would have seen the stop sign at the right of the graveled highway on which he was traveling. He testified that he has never yet seen it. He stated that he thought he had to look to the west for drivers coming from his right and that he himself had the right of way over one coming from the east or from his left on the pavement. The physical facts as well as his own testimony show that he had entered upon the pavement and was struck before he stopped or a very short instant thereafter. Not excusing the negligence of defendants, this action on the part of plaintiff, in our opinion, was more than slight negligence.

The leading case in this state was a decision written by Chief Justice Morrissey, setting out the form of an instruction on comparison of negligence. It was for damages for injuries in an automobile accident. *Morrison v. Scotts Bluff County*, 104 Neb. 254, 177 N. W. 158. This case has been followed by many others, among them *Nelson v. Plautz*, 130 Neb. 641, 265 N. W. 885, and *Kudrna v. Sarpy County*, 125 Neb. 83, 249 N. W. 87. From these and many other cases which might be cited we deduce this rule: Where the evidence establishes that the plaintiff was guilty of more than slight negligence, it becomes a question of law for the court and it is the duty of the court to direct a verdict for the defendant.

The judgment of the district court is reversed and the action is dismissed.

REVERSED AND DISMISSED.