LENA EATON, ADMINISTRATRIX, APPELLANT, V. GERALD MERRITT ET AL., TRUSTEES, ET AL., APPELLEES.

281 N. W. 620

FILED OCTOBER 11, 1938. No. 30394.

*Good & Simons,* for appellant.

*Chambers, Holland & Locke, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

This is an action for damages for wrongful death, instituted in the district court for Lancaster county by Lena

Eaton, administratrix of the estate of Arthur Eaton, deceased, against the defendants, appellees, Gerald Merritt and Roger L. Merritt, as trustees of the D. H. Merritt estate and individually. At the conclusion of plaintiff's evidence, defendants moved for a directed verdict, which the court sustained. Plaintiff appeals.

The allegations of negligence relied on by plaintiff may be summarized as follows: That defendants operated a truck without proper brakes; that the truck was parked in a position, dangerous and hazardous to life, without brakes and safeguards sufficient to prevent the truck from rolling into an excavation where the deceased was working; that the driver of the truck, knowing of the presence and the position of the deceased in the excavation, negligently and carelessly placed said truck on a slope of the excavation without adequate mechanical appliances to prevent such truck from moving, of its own force of gravity, down into said excavation and upon and against the deceased; that, in the exercise of due care, defendants should have known the position of the deceased and the consequences resulting from dumping the contents of the truck. The answer of the defendants contained a general denial, and alleged negligence on the part of the deceased, and that such negligence was the sole and proximate cause of the accident. The reply was a general denial.

The evidence discloses that on March 11, 1937, Arthur Eaton, a man 65 years of age, with 30 years' experience in the cement and contracting business, was employed to work in an excavation at 1002 South Thirty-second street, in Lincoln, Nebraska. He had as his helper his grandson, Robert Eaton, 19 years of age. They were engaged in putting in footings and had gone to work at about 1:30 p. m. The basement had been dug approximately six feet deep from the ground level and was 30 feet square inside the walls. Arthur Eaton and his grandson were placing the center footing forms. Along the walls and at the edges of the floor of the excavation a wooden form, 15 inches in width and 12 inches high, had been placed, into which ready-

mixed cement was to be poured as a footing. The cement was delivered to the basement by the defendants in a 1930 International gravity truck, with a wheel base of 124 inches, and with an hydraulic lift, which when pulled tripped the lever, and by having more weight in the back than in the front of the box it is overbalanced and dumps. Two loads of cement were delivered to the premises approximately 30 minutes apart. When the first load of cement was delivered there were present C. P. Christiansen, foreman on the job, representing the real estate firm that was building the house, Arthur Eaton, Robert, his grandson and helper, and a salesman of the defendants. When the first load arrived the truck was driven on the south side of the excavation, facing east, and stopped. The driver got out and asked where the cement should be put, and was told by some one on the job where he should place it. The driver backed up his truck to this point in the southeast corner on the south side of the excavation within two or three feet of the excavation. The salesman blocked the truck by placing a piece of concrete under one of its rear wheels. When the concrete was dumped it pushed one of the footing forms in the southeast corner out of place. The truck carries approximately 3,300 pounds of cement. About a half hour after the delivery of the first load, the same driver returned with another load of cement. It was stopped approximately in the same position as on the first delivery. The driver inquired as to where he should place the second load and proceeded to park his truck in position on the east side of the excavation. The general contour of the land to the east of the excavation, where the dirt had been shoveled out from the edge of the foundation for a few feet, was a grade, then leveled off to the east. The back wheels of the truck were placed between eight and ten feet from the edge of the east wall of the basement. The truck faced southeast when stopped on the slope, the slope being approximately 36 inches over a distance of from eight to ten feet. There was a pile of dirt on the north, and in order to get by the dirt the truck had to be backed in on an angle. The front of the truck was a little farther

to the south than the back of the truck. It had been parked on fairly level ground on an angle, with the front wheels cramped to the right, so that they were farther to the south than the back part of the truck. There was a conversation between the driver and Robert Eaton, who was standing in close proximity to the driver. This conversation occurred possibly a minute prior to the accident. Robert Eaton, at the suggestion of the truck driver, blocked the left rear wheel of the truck, using the same slab of concrete as was used in blocking the truck on the first load. It had a surface area of 12 by 14 inches and was approximately four and a half inches in thickness. Robert Eaton testified the driver of the truck stated that he was back as far as he wanted to go, because his brakes were not any good, and he was afraid they would not hold. On cross-examination, referring to the same conversation, young Eaton admitted he had testified in a deposition: "Q. What did you hear of that conversation? A. The driver said he was not sure of the brakes on his truck." The engine of the truck was running; the driver remaining in the cab. When the driver was ready to dump the load, he asked Robert Eaton if they were ready. Robert called to his grandfather, who was in the excavation approximately 12 to 15 feet back of the rear end of the truck, and three to four feet west of the east footing form, holding the form in place with a short-handled shovel, and asked if he was ready. Robert was asked on the stand: "What did you say? A. The truck driver asked me if we was ready to dump the load and I hollered down to my grandfather and asked if he was ready. He hollered back to me he was and I in turn told the truck driver. Q. What did you tell the truck driver? A. I said 'Go ahead and dump it.' * * * Q. And he dumped it? A. Yes, sir." The truck was dumped in the usual manner by force of gravity. The back end of the box went down and the front end up. A corner of the concrete slab under the left rear wheel was broken. When the truck was dumped, it was immediately precipitated down into the excavation. The witness was asked to give the jury a description of the way the

truck backed into the basement, as to the direction it took, and its speed, and he answered: "It would be rather hard to estimate the speed, it went so fast, it happened so quick it would be hard to tell how fast it was going, but the wheels being left in the cramped position they were the truck had a tendency to straighten up from the angle it had been parked. The back end,—in going back down in the hole the back end went around further south and had to go straight. Q. So that after the truck was down into the hole it would be approximately straight east and west then, was it? A. Yes; it was." When the truck went down into the excavation the back wheels were about a foot west of the footing before the truck stopped, while the front wheels were on the bank. The rear end of the truck struck the deceased across the lower abdomen, causing internal injuries which resulted in his death the next morning. The truck was moved forward about a foot and the deceased was taken from under the truck.

C. P. Christiansen was asked as to any conversation had between the truck driver and any others present when the driver arrived with the first load, to which he answered: "On the first load. Well, when the driver backed in all I know he says he don't want to get any closer to the bank than he had to because he didn't know whether his brakes would hold it or not, that is what he said." On cross-examination the witness was asked: "Did you hear any one at any time tell Mr. Eaton not to stand behind the truck? A. Well, the first load. Q. Answer my question. A. Yes, sir. Q. You did hear them tell him that? A. Yes, sir." Asked to tell what was said there, the witness replied: "I was going to say that he did. He said, 'Better not stand back of it,' that is all."

Professor W. F. Weiland, of the engineering faculty of the University of Nebraska, an expert on brakes, testified for the plaintiff, in answer to hypothetical questions, that if the brakes of a truck, such as the one in suit, are adequate the wheels will have to slide, and if the brakes are inadequate the wheels will have to roll. Robert Eaton testi-

fied that the wheels rolled when the truck was precipitated into the excavation. The witness Weiland further testified that if the brakes on the truck had been adequate, taking into consideration the contour of the ground where the truck was parked, then the brakes would have held the truck and kept it from being precipitated into the excavation. He placed no particular credence on the fact that the left rear wheel of the truck was blocked; nor did he in his calculations consider the size of the brake drums, the brake bands, the wheels or tires, which we believe are subjects to be considered.

The issue to be decided is whether or not the evidence adduced is sufficient to take the case to the jury.

In this connection plaintiff cites the case of *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163, wherein it was held: "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Plaintiff also cites the case of *Major v. Harrison,* 132 Neb. 363, 272 N. W. 201, and *Plotkin v. Checker Cab Co.,* 133 Neb. 1, 274 N. W. 198. In the latter case, the second paragraph of the syllabus reads: " 'Where from the facts and circumstances proved reasonable minds might draw different conclusions concerning the negligence or lack of negligence of the respective parties, it is error to sustain a motion for an instructed verdict.' *Boomer v. Lancaster County,* 115 Neb. 295, 212 N. W. 613."

In order to analyze the evidence in conformity with the law as announced in the foregoing and other cases, cited in this regard by the plaintiff, we have set out the evidence quite extensively.

It is true, as contended for by plaintiff, that admissions or statements made by a party with reference to defective brakes on a motor vehicle may be used as competent evi-

dence against him, and that all of the facts and circumstances in reference thereto may be considered in determining the relative care to be exercised by the driver. With the Nebraska and foreign authorities cited by plaintiff on this proposition there can be no quarrel.

The cases of *Taulborg v. Andresen,* 119 Neb. 273, 228 N. W. 528, and *Baumann v. Hutchinson,* 124 Neb. 188, 245 N. W. 596, cited by plaintiff, relative to the duty of the operator of a motor vehicle in backing his motor vehicle on a highway, street or public alley, are not pertinent. The truck in the instant case was parked on private property, and was not moving at the time the load was to be dumped.

The evidence does not show the condition of the brakes on the truck at any time immediately subsequent to the accident; nor are we informed as to the defects in the brakes, if any, before the accident. The entire evidence relative to the brakes is the testimony of the driver of the truck and of the witness Weiland. This evidence, standing alone, is insufficient to constitute a cause of action.

"Negligence is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done." *Omaha Street R. Co. v. Craig,* 39 Neb. 601, 58 N. W. 209. We believe that the evidence in the case at bar conclusively discloses that the driver of the truck did use that degree of care that an ordinarily prudent person would have used under the existing circumstances.

Appellees contend that the deceased was negligent, and that his negligence was more than slight, and, therefore, it was a question of law for the court to determine. Without repeating the evidence, we believe it fairly discloses that the deceased voluntarily placed himself in a position that was dangerous. The parking of the truck was under his direction; he was in charge of the premises; that is, in so far as his work was concerned in having the cement placed where he desired to have it put. The truck driver, in dumping the cement at the direction of deceased or his grandson,

was doing it as an accommodation to lessen their work. The deceased had been previously warned; the plaintiff states it was "casual," but nevertheless it was a warning which might be heeded under the circumstances. He was in a position to see the truck; he must have known that one of its wheels was blocked; he was desirous of keeping the forms from breaking; he used a short-handled shovel braced against the form, and elected to stand in that position. He was ready to have the cement dumped and so stated. He did not conduct himself as an ordinarily prudent person would have done under like circumstances. We are of the opinion that his conduct meets the definition of "contributory negligence," as stated in *Kovar v. Beckius*, 133 Neb. 487, 275 N. W. 670: " 'Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause.' 45 C. J. 942."

The foregoing definition applies if there is actionable negligence on the part of the defendant, or, in this case, the driver of defendants' truck, and the record does not disclose actionable negligence on his part. However, as a question of law, the court, in considering the negligence, if any, obviously applied the rule as to contributory negligence, which meets the holding in *Ritter v. Hering, ante,* p. 1, 280 N. W. 231, as follows: "Where the evidence establishes that the plaintiff was guilty of more than slight negligence, it becomes a question of law for the court and it is the duty of the court to direct a verdict for the defendant." See, also, *Johnson v. City of Omaha,* 108 Neb. 481, 188 N. W. 122; *Kudrna v. Sarpy County,* 125 Neb. 83, 249 N. W. 87; *Nelson v. Plautz,* 130 Neb. 641, 265 N. W. 885.

We believe that the facts and circumstances in the instant case warranted the trial court in directing a verdict in favor of the defendants.

AFFIRMED.