PERRY CHANA, ADMINISTRATOR, APPELLEE, V. FRANK MANNLEIN, APPELLANT.

3 N. W. (2d) 572

FILED APRIL 24, 1942.   No. 31309.

*William Keeshan, Walter, Flory & Schmid* and *Chambers, Holland & Locke,* for appellant.

*D. L. Jouvenat* and *William M. Ely, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESS-MORE and YEAGER, JJ.

PAINE, J.

This is an action for damages, brought by the administrator of the estate of Henry J. Chana, against Frank Mannlein for damages resulting from a collision between two trucks. The jury returned a verdict for $5,950, which the trial court reduced to $5,700 by striking out an item of $250 allowed for pain and suffering. Defendant appeals.

Petition was filed in the district court, alleging as a first cause of action that there was a regularly established highway in Boone county extending westward for a distance of several miles from the village of Petersburg, which highway was a graded dirt road, without gravel or other artificial surfacing, and of a width of about 30 feet; that at a point about two miles west of Petersburg there was a wooden bridge on said highway, which bridge was about 16 feet wide and about 16 feet long, and on account of the narrowness of said bridge it was unsafe, if not wholly impossible, for more than one automobile or motor truck to cross said

bridge at the same time; that said bridge was located in a valley at the bottom of two hills on either side thereof.

The petition further alleges that on November 9, 1938, about 10:30 a. m., Henry J. Chana, deceased, was driving his Chevrolet 1½-ton 1935 model motor truck in a westerly direction on said highway above described; that said motor truck was equipped with a grain box, eight feet wide, loaded with 1½ tons of coal which he was taking home; that said truck was also equipped with tire chains on the two rear wheels thereof; that he drove his said motor truck in a careful and cautious manner, at a speed not greater than 35 miles an hour, and on the right side of the center line of said highway until he reached a point about 200 feet east of said bridge, where it became necessary for him to turn said truck to the center of the highway to enable him to cross said bridge; that he then reduced his speed to about 25 miles an hour, and turned his said truck to the center of the highway preparatory to crossing the bridge, when there appeared on the hill immediately to the west of said bridge the motor truck of defendant, traveling east on said highway, and being driven at a high, improper and unreasonable rate of speed of at least 45 miles an hour, and said defendant drove his truck directly into the truck of Henry J. Chana after Chana had reached the bridge and started to drive thereon, with such force and violence that the Chana truck was driven and pushed backward off said bridge; that it was utterly impossible for Henry J. Chana to alter his course or stop his truck before reaching said bridge, and said collision was inevitable so far as it was in the power of Henry J. Chana to prevent it.

It is charged that the defendant, Frank Mannlein, drove his truck at a rate of speed greater than was reasonable and proper, having due regard to the condition of the road,—so fast as to endanger the life and limb of persons traveling on said highway; that he was unable to stop it before it collided with the truck of said Henry J. Chana; that he drove and operated said truck while the road upon which he was driving was wet and slippery, without any chains on

the tires of said truck; that plaintiff was closest to the bridge and had right of way.

It is alleged that the truck of Henry J. Chana was utterly demolished, and said Henry J. Chana suffered great internal and external injuries, from which he died about two hours after the accident; that as the direct and proximate result of the negligent acts of defendant, the said Henry J. Chana was damaged in the total sum of $1,200, as follows: For damage to his truck, $400; for pain and suffering endured by him, $500; for expense incurred for the services of a physician and surgeon, $50; for expense contracted for funeral and burial, $250.

As a second cause of action, the petition describes in detail the injuries to Henry J. Chana which led to his death, and states that he was 55 years of age, and left surviving him his widow and seven children, aged from 9 to 32 years, only two of said children living at home and being dependent on their father for support; that the deceased was a strong and able-bodied man, engaging in the business of farming and operating a motor truck for hire, and was earning from $800 to $1,200 annually.

The plaintiff prays judgment on the first cause of action in the sum of $1,200, and on the second cause of action in the sum of $15,000, with interest and costs of suit.

Answer was filed, admitting the collision, but denying that said collision was caused through any fault, negligence or carelessness of the defendant, but alleging that said collision was caused solely by the negligent, careless, reckless and unlawful operation of his truck by the said Henry J. Chana in the following respects: That said Henry J. Chana approached the bridge at an unlawful and unreasonable rate of speed, in excess of 45 miles an hour, although he could clearly see the truck driven by the defendant, Frank Mannlein, approaching and crossing said bridge before the said Chana reached the bridge; that said Henry J. Chana made no attempt to turn out and slow down, and to avoid the collision with the other truck, but drove his truck into and against the truck driven by defendant as said defend-

ant's truck was leaving the east end of said bridge; that Henry J. Chana did not have his truck under control, and was driving at a rate of speed higher than was reasonable and proper under the conditions of the road and in approaching the bridge across which defendant's truck was driving.

Trial was had to a jury, and on March 12, 1941, a verdict was entered in favor of the plaintiff, and fixing his recovery on his first cause of action in the aggregate amount of $950, and on the second cause of action, for loss of support, at $5,000, or a total of $5,950.

The errors relied upon for reversal by defendant are: (1) There was not sufficient evidence to support the verdict of the jury and the judgment of the court; (2) the verdict and judgment are contrary to the evidence; (3) the court erred in overruling defendant's motion for directed verdict when plaintiff had rested.

It will thus be seen that the defendant relies for reversal upon the fact that the evidence does not support a recovery in the case, and therefore the trial judge should have directed a verdict for the defendant.

The jury went out and visited the scene of the collision, and saw the lay of the ground as the road approached the bridge from either side, and the trial judge went out and visited the place of the accident before passing on the motion for a new trial. However, we believe the facts, most of which are undisputed, give us a very clear picture of the whole situation, and exactly how the unfortunate accident occurred.

The bill of exceptions discloses that these two trucks were approaching each other at about 10:30 a. m., on a perfectly clear day, where one could see for quite a way on each side of this small bridge. It happened on a 24-foot road, which was perfectly familiar to both of these drivers. The deceased knew this bridge, which crossed a ravine, and knew that it was only 16 feet wide, and two ordinary-size trucks could not pass on the bridge. His son James and a neighbor, A. B. Carnahan, were riding with him. The deceased was driving toward the west, with 1½ tons of coal for his load. The de-

fendant was alone, and driving from the west toward the east. There is some little dispute about the condition of the surface of the road. It was a dirt road, no gravel. It was just an ordinary country road. Some days before this there had been a six-inch snow, but the evidence shows that there was a good, dry track in the center of the road. The sheriff and others went out immediately after the accident. This culvert, or bridge, is 16 feet wide and 16 feet long, and in a valley.

Going west from this bridge, the road was level for at least 100 feet, then gradually ascended to the top of a very small hill, which was only 29 feet higher than the floor of the bridge, the top of the hill being 475 feet west of the bridge. Going on west, the surface drops 3½ feet in the next 300 feet, and then drops more sharply for 400 feet, until at the bottom of the decline, 800 feet west, you are 16 feet below the top of the first little hill west of the bridge, and would be out of sight to any one on the bridge, then the road gradually rises to the top of the big hill, which is 2,125 feet west of the bridge.

The deceased, coming from the east, would be driving down a gradual slope of a hill, the top of which was some 1,300 feet east of the bridge. Surveyor Brown testified that a driver approaching the bridge from the east, and 400 feet distant therefrom, could see a truck approaching from the west when it was 900 feet west of the bridge; in other words, the drivers of the two trucks approaching the bridge would be visible to each other when they were 1,300 to 1,400 feet apart.

A. B. Carnahan, who was sitting in the cab with the deceased and his son James, testified that, when they came over the hill east of the bridge, Henry (the deceased) said, "There comes Franz back," and at that time they were traveling 35, or a little better, but slackened some when he approached the bridge. When the defendant's truck got down on the level road west of the bridge, there was a mud-hole three or four rods west of the bridge, and he turned out clear to the shoulder to go around this, and then right

back into the road and came right on, and deceased said, "Oh, my God!" and put on his brakes, and defendant's truck crossed the bridge and turned the front end of his truck to the right when the collision occurred.

Both of the trucks stopped instantly at the point of collision, which would indicate that the defendant's truck was not going very fast when they collided. The mark made by the crossed chains was distinct right up to the place of the collision.

Carnahan's evidence on cross-examination as to the moment of the collision is as follows: "Q. 442. And you said that you were expecting that Mr. Chana would slow down all the way as you approached the bridge, didn't you? A. I probably did. Q. 443. You could see the Mannlein truck approaching? A. Yes, sir. Q. 444. And you were expecting Mr. Chana to slow down and pull out? A. Well I supposed one or the other of them would. Q. 445. And neither of them did? A. No, sir."

James Chana, the 18-year-old son of the deceased, who was riding with his father, testified on direct examination as follows: "Q. 539. Did you observe at any time before you reached the bridge at the foot of that hill whether your father slowed the truck down or not? A. I can't say if he did or not." On cross-examination he made these answers: "Q. 613. But as near as you could guess it you were going 30 to 35 miles per hour? A. Yes, sir. Q. 614. And you continued at practically the same speed right down to the bridge? A. Yes, sir. Q. 615. So the brakes were not applied to your truck all the way down the hill, were they? A. No, sir. * * * Q. 618. Were the brakes working all right on that truck? A. Yes, sir. Q. 619. They would stop it quickly? A. Yes, sir. Q. 620. And you had chains on your truck? A. Yes, sir. * * * Q. 626. And then during that quarter of a mile there wasn't any effort made that you saw to slow your truck down? A. No. Q. 627. And yet during all that time you knew this other truck was coming towards you, didn't you? A. Yes, sir."

Delbert Henn testified that he reached the scene of the

accident·half an hour after it happened; that the two trucks were both just a few feet east of the bridge, and no part of either was on the bridge; that he traced the marks back of the Chana truck; that you could see the chain marks of the left rear wheel, and there was no indication of sliding of the chain, or skidding,—it was just a plain, rolling chain track, —and that this track came straight down the center of the road, and had not turned; that the front end of the Mannlein truck had been turned to the south or right-hand side, and that the front end, the radiator, was not damaged.

The defendant testified that from a point 875 feet west of the bridge until he crossed the bridge he was traveling at the same rate of speed, about 30 miles an hour; that when he saw Chana was not making any attempt to get out of the track or stop, he crowded his truck over as far as he could to the right, and says the collision took place on the east side of the bridge, just after he had crossed the bridge; that his truck was hit on the left front fender and door. He says positively that the Chana truck did not slow down, or turn out.

At the close of the plaintiff's evidence, the defendant moved the court for a directed verdict "for the defendant for the reason that plaintiff has not proved a cause of action against the defendant, the evidence of the plaintiff conclusively showing that under the most favorable view of said evidence that deceased Henry J. Chana was the driver of the truck in which he was riding, that the said Henry J. Chana—as shown by the evidence—was guilty of contributory negligence greater than slight, and that if the evidence shows any negligence whatever on the part of defendant, defendant's negligence was short of gross negligence under the circumstances and the contributory negligence of the said Henry J. Chana would bar a recovery by plaintiff in this action. Overruled. Exception."

This court has said in the case of *Ritter v. Hering*, 135 Neb. 1, 280 N. W. 231: "Where the evidence establishes that plaintiff was guilty of more than slight negligence, it becomes a question of law for the court and it is the duty of

the court to direct a verdict for the defendant;" and, while the case involved an arterial highway, it none the less states the law, which was given at greater length by Morrissey, C. J., in *Morrison v. Scotts Bluff County*, 104 Neb. 254, 177 N. W. 158. See, also, *Nelson v. Plautz*, 130 Neb. 641, 265 N. W. 885; *Klement v. Lindell*, 139 Neb. 540, 298 N. W. 137.

A driver of a truck, who, nearing a narrow one-way bridge in broad daylight, and seeing another truck approaching, while both vehicles were still several hundred feet from the bridge, and who fails to slacken his speed of 30 to 35 miles an hour, and collides with the other truck just after it has crossed the narrow bridge, is guilty of contributory negligence greater than slight, and is barred from recovering for injuries sustained in collision, even though the driver of other truck was also negligent. See *Gresham v. Branscome*, 121 Fed. (2d) 440; *Eaton v. Merritt*, 135 Neb. 363, 281 N. W. 620; *McDonald v. Omaha & C. B. Street R. Co.*, 128 Neb. 17, 257 N. W. 489; *Kudrna v. Sarpy County*, 125 Neb. 83, 249 N. W. 87.

"Where two automobiles going in opposite directions approach a bridge on a public highway, it is the duty of each driver to keep on the right of the center, if the bridge is a safe two-way drive; their rights and duties being equal, though one reaches the bridge before the other. In approaching a bridge too narrow to admit of vehicles passing each other, a driver should exercise due care to avoid the contingency of being on the bridge simultaneously with another vehicle, and, if the bridge is narrow, passing motorists should proceed at a reasonable speed, maintaining their automobiles under such control as to enable each to safely keep on his side of the road." 2 Blashfield, Cyclopedia of Automobile Law and Practice, 48, sec. 904.

"Where the evidence shows beyond reasonable dispute that plaintiff's negligence was more than slight as compared with defendant's negligence, the jury should be instructed to find for the defendant." *Whittaker v. Hanifin*, 138 Neb. 18, 291 N. W. 723.

In our opinion, the verdict in the case at bar is contrary to the weight of the evidence, which clearly establishes that the plaintiff's deceased was guilty of negligence more than slight, which barred a recovery. The motion of the defendant for a directed verdict at the close of plaintiff's evidence should have been sustained and the action dismissed.

REVERSED AND DISMISSED.

ROSE, J., dissenting.

My understanding of this case is that it is one of fact for the jury and not one of law for the court. The collision resulting in the death of Henry J. Chana occurred at the end of a 16-foot bridge over a ravine five or six feet deep on an unpaved public highway running east and west. The general slope of the land was toward the ravine and the drivers of the trucks could see the approach of each other for a considerable distance. The Chana truck came toward the bridge from the east and the Mannlein truck from the west. As I view the evidence, it was permissible for the jury to find that when the Chana truck was 216 feet from the bridge, and the Mannlein truck was about 475 feet therefrom, both were traveling at approximately the same rate of speed; but that due to increase of speed by defendant both reached the 16-foot bridge at practically the same time; that before running onto the bridge, the Mannlein truck was turned to the right as if to stop, but instead of doing so ran onto the bridge without slackening speed.

It seems to me that, under the circumstances, the driver of the Chana truck had the right of way and the right to presume defendant would stop before running onto the bridge as he indicated he would; and that the driver of the Chana truck was not negligent as a matter of law. The jury, after viewing the scene of the collision and considering all the evidence and the circumstances, rendered a verdict in favor of plaintiff and I think the judgment thereon should be affirmed.